IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JEROME N. WALLACE, SR. | |
| Plaintiff, | 8:22–CV–367 |
| vs. | |
| THE UNITED STATES ARMY and THE UNITED STATES OF AMERICA, | MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS |
| Defendants. | |

*Pro se* plaintiff Jerome N. Wallace, Sr., filed suit seeking lost wages and injunctive relief based on his claim that the United States Army erroneously designated him as "killed in action" on November 2, 1966. Filing 1 at 3–4. As he did in a prior lawsuit, Wallace has named the United States Army and the United States of America as defendants. Filing 1 at 2.[1] It is appropriate to provide some background and context at this stage before addressing the merits of the Motion presently pending before this Court.

## I. BACKGROUND

### A. Wallace's Other Lawsuits in this Court

The Court takes judicial notice that this is not the first time Wallace has initiated an action in this Court seeking relief in connection with his claim that United States declared him dead.[2] *See Northport Health Servs. of Arkansas, LLC v. Ellis*, No. 2:20-CV-02021, 2020 WL 1846531, at *3 (W.D. Ark. Apr. 10, 2020) (recognizing a district court's authority to take judicial notice of its

---

[1] The Court will collectively refer to both defendants as the United States.

[2] *See Wallace v. United States Army*, No. 8:21-CV-456, 2022 WL 310152, at *1 (D. Neb. Feb. 2, 2022) (noting that Wallace "alleged the United States Army declared he was killed in action in 1966" and asked that the Court "declare him alive and to order backpay and SGLI insurance coverage"); *Wallace v. United States Army*, No. 8:21-CV-456, 2022 WL 4238921, at *1 (D. Neb. Sept. 14, 2022) (noting that Wallace's case against the Army and the United States was dismissed without prejudice for lack of subject matter jurisdiction on July 18, 2022).

1

own docket). Less than a year ago, this Court dismissed a prior suit Wallace brought against the United States in Case No. 21–CV–456 without prejudice. *See Wallace*, 2022 WL 4238921, at *1. In that case, the Court determined that Wallace had not administratively exhausted the claims he was attempting to assert and, therefore, subject-matter jurisdiction was lacking. *See* Memorandum and Order of the Court, dated July 18, 2022, Case No. 21–CV–456 at 3. The Court also noted in this Order that Wallace provided the Court with "military documentation illustrating that [he] was 'discharged' in 1967, rather than killed in action." *See* Memorandum and Order of the Court, dated July 18, 2022, Case No. 21–CV–456 at 4. In other words, although Wallace has repeatedly claimed he was declared dead by the military, the documentation the Court reviewed in the previously-referenced case suggested that Wallace was not declared dead, and was instead discharged in 1967.

In addition to that prior lawsuit and the present lawsuit, Wallace also initiated a separate action against the Prudential Insurance Company of America seeking benefits related to a Servicemember's Group Life Insurance policy. *See* Case No. 8:22-cv-366 (initiated on October 24, 2022). Wallace similarly claimed in that case that he had been declared killed in action on November 2, 1966. In an Order dated April 18, 2023, this Court dismissed Wallace's claim against Prudential in Case No. 8:22-cv-366 pursuant to Federal Rule of Civil Procedure 12(b)(6). Against this backdrop, the Court now turns to the matter at issue in the above-captioned case.

### B. The Present Case Brought by Wallace

*1. Summary of Decision*

This matter is before the Court on the United States' Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Filing 15. Liberally construed, the Court understands Wallace to be seeking injunctive relief as well as damages for lost wages pursuant to 10 U.S.C. § 1511. This statute allows servicemembers who were declared dead to

2

recover benefits they lost as a result of their declaration of death if they are "found alive and returned to the control of the United States[.]" *See* 10 U.S.C. § 1511(a).

Wallace has requested a hearing on this matter and has also requested that this Court subpoena a retired Judge Advocate who is presently associated with the Veteran Legal Support Network. Filing 19 at 1; Filing 21 at 2. The Court will address these requests in this Order as well. After considering the relevant law, pertinent portions of the record, and the parties' submissions, the Court concludes that it lacks subject matter jurisdiction over Wallace's claim for damages under 10 U.S.C. § 1511 and his request for injunctive relief. In the alternative, even if the Court had subject-matter jurisdiction, it would find that Wallace has failed to state a cognizable claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).[3]

2. *Procedural Background to the Present Case*

A few months after his prior case against the United States in Case No. 21–CV–456 was dismissed without prejudice, Wallace initiated the present lawsuit. *See* Filing 1 at 1. Wallace used the Court's standard *pro se* "Complaint for a Civil Case" form to set forth his claims in the present case.[4] *See generally* Filing 1. As before, Wallace once again alleges that the United States "declared" him to be deceased. *See* Filing 1 at 3. On the portion of the form directing plaintiffs to set forth the jurisdictional basis for their claim, Wallace wrote: "That the United State[s] Army declared individual killed in action November 2, 1966 and permanent military records [illegible] sent to casualty archives November 2, 1966." Filing 1 at 3 (lowercase typeface substituted where

---

[3] Wallace also filed a Brief on May 23, 2023, captioned "Plaintiffs' Brief IN OFFOSITION [sic] TO DEFENDANTS' MISS SPELLING [sic] of PLAINTIFF NAME." Filing 23 at 1. In this filing, Wallace requests that the United States address him "by his true name which is JEROME N. WALLACE SR., not JEROME H. WALLACE SR." Filing 23 at 1. The Court notes that the United States appears to have incorrectly used the wrong middle initial in referring to Wallace. *See e.g.*, Filing 15 at 1. The Court has no reason to conclude that this was anything other than a typographical error and finds that no action is necessary.

[4] This form is publicly available at https://www.uscourts.gov/forms/pro-se-forms/complaint-civil-case.

appropriate). On the portion of the form directing plaintiffs to provide a short and plain statement of their claim, Wallace wrote: "United States Army/United States declared individual KIA in Vietnam 1966 November 2. And individual was mistaken identity for a different soldier. But United States Army still had individual still in the military." Filing 1 at 4 (lowercase typeface substituted where appropriate). On the portion of the form directing plaintiffs to articulate the relief they seek, Wallace wrote: "That individual records be change [sic] and correct [sic]. That individual be paid lost wages. There is know [sic] amount that can be put on do [sic] to changing a[n] individual[']s life." Filing 1 at 4 (lowercase typeface substituted where appropriate). His Complaint provides no further detail as to his claims. *See generally* Filing 1. Thereafter, the United States filed a Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Filing 15; *see also* Filing 16. Wallace responded by submitting a one-page filing he captioned, "Plaintiff's Brief Rebuttal in Support of Facts and Evidence to Monetary Relief." Filing 17. The United States then filed its reply brief. Filing 18. The foregoing filings were timely and generally in accordance with the established procedure set forth in this Court's local rules. *See generally* NECivR 7.1.

Two days after the United States filed its reply brief, however, Wallace submitted an additional filing (without leave of the Court) requesting "a hearing because this case covers so much complexity and sensitive matters." Filing 19 at 1. The United States took "no position on the motion[,]" but noted that it understood Wallace to be seeking "an untimely request for oral argument or an evidentiary hearing on . . . [the] Motion to Dismiss." Filing 20 at 1. Wallace then submitted another filing (again without leave of the Court) captioned "PLAINTIFFS [sic] REPLY WITH EVIDENCE NOT TO DISMISS CASE[.]" Filing 21 at 1. This filing included nine pages of military records as attachments. *See* Filing 21 at 3–11. In this submission, Wallace asks the

4

Court to subpoena a retired Marine Judge Advocate because, according to Wallace, this Judge Advocate "discovered" certain military records pertaining to Wallace. Filing 21 at 2. The United States responded by asserting that Wallace's "latest filing does nothing to cure the defects detailed in [the United States' original] brief." Filing 22 at 1 (citing Filing 16).

## II. LEGAL ANALYSIS

### A. *Pro Se* Considerations

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted). "Though pro se complaints are to be construed liberally . . . they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *accord Sandknop v. Missouri Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir 2019); *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("Although we must liberally construe plaintiff's factual allegations . . . we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (internal citation omitted).

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

*Stone*, 364 F.3d at 915.

Moreover, when evaluating a motion to dismiss a *pro se* plaintiff's complaint the Eighth Circuit Court of Appeals requires district courts to consider both the allegations made in a complaint and the allegations in the plaintiff's response to the motion to dismiss. *See Neudecker v. Boisclair Corp.*, 351 F.3d 361, 362 (8th Cir. 2003) (considering facts alleged by the *pro se*

plaintiff "in his complaint and in response to the motion to dismiss" and citing *Anthony v. Runyon*, 76 F.3d 210 (8th Cir. 1996), for the proposition that a "district court must consider allegations made in response to [a] motion to dismiss"); *Anthony*, 76 F.3d at 214 (holding that the district court erred in not considering new allegations made in response to a motion to substitute and dismiss); *see also Pratt v. Corrs. Corp. of Am.*, 124 F. App'x 465, 466 (8th Cir. 2005) (per curiam) ("Initially, we note the district court was required to consider the allegations not only in [the plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

### B. Discussion

1. *The Court Liberally Construes Wallace to Be Alleging a Claim Pursuant to the Missing Service Personnel Act, 10 U.S.C. § 1501, et seq.*

The United States argues that the "threadbare allegations" in Wallace's Complaint make it "impossible for [it] to know what claims [it is] defending against." Filing 16 at 4. The Court agrees. *See generally* Filing 1. However, as noted above, Eighth Circuit precedent requires this Court to consider the allegations made in a *pro se* litigant's response to a motion to dismiss in addition to the allegations previously set forth in his complaint, so the Court must also account for what Wallace claims in his opposition brief. *See Neudecker*, 351 F.3d at 362 (citing *Anthony*, 76 F.3d at 214); *see also Pratt*, 124 F. App'x at 466.[5]

---

[5] This Court is of course bound to apply Eighth Circuit precedent. *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003). However, the Court observes that this view of the law has been rejected by some other federal courts outside the Eighth Circuit. *See e.g.*, *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015) (stating within the context of a case brought by a *pro se* litigant, "[i]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss") (quotation marks and citation omitted); *Rosebuck v. Dothan Sec. Inc.*, 515 App'x 275, 280 (5th Cir. 2013) (concluding that the district court did not err in dismissing a *pro se* plaintiff's complaint because even though the plaintiff "set forth more specific factual allegations in his brief . . . [his] conclusory allegations do not contain sufficient factual matter to survive [the defendant's] motion to dismiss") (citing the Seventh Circuit's decision in *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) for the proposition that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

Wallace's Complaint alleges that the United States "declared" him killed in action on November 2, 1966, and requests that he "be paid lost wages[.]" Filing 1 at 4. Wallace did not reference any statutes in his Complaint, but he does cite 10 U.S.C. § 1511 in his opposition brief. *See* Filing 17 at 1 (Wallace stating, "That under military law 10 USC 1511: Return alive of person declared missing or dead that the UNITED STATES ARMY AND THE UNITED STATES has not return [sic] plaintiff back to life"). The statute Wallace cites is part of the Missing Service Personnel Act (MSPA). *See* 10 U.S.C. § 1501, *et seq.* It states, in pertinent part, that:

> Any person (except for a person subsequently determined to have been absent without leave or a deserter) in a missing status or declared dead under subchapter VII of chapter 55 of title 5 or chapter 10 of title 37 or by a board appointed under this chapter who is found alive and returned to the control of the United States shall be paid for the full time of the absence of the person while given that status or declared dead under the law and regulations relating to the pay and allowances of persons returning from a missing status.

10 U.S.C. § 1511(a).[6]

When liberally construing Wallace's Complaint and accounting for the explicit reference to 10 U.S.C. § 1511 in his opposition brief, Filing 17 at 1, the Court understands him to be grounding his claim for damages in this statute. Thus, because the "essence of [Wallace's] allegation is discernable, even though it is not pleaded with legal nicety," the Court will consider his claim within "the proper legal framework" of 10 U.S.C. § 1511. *See Stone*, 364 F.3d at 915. Still, the fact that the Court can discern the essence of his claim does not mean that this Court has subject-matter jurisdiction over such a claim or that it is cognizable.

---

[6] The present iteration of 10 U.S.C. § 1511(a) has been the subject of scholarly analysis, but it does not appear to have been substantively addressed by any court. *See* Major Pamela M. Stahl, *The New Law on Department of Defense Personnel Missing As A Result of Hostile Action,* 152 Mil. L. Rev. 75, 167 (1996) (describing this provision to mean, "[i]f a person who is declared dead is later returned to United States control, the person is entitled to all benefits lost because of the declaration of death, including pay and allowances accrued during that period").

2.  *Judicial Review is Unavailable Under the MSPA*

"The MSPA provides an exception to sovereign immunity, but it does so in very limited circumstances." *Eakin v. Am. Battle Monuments Comm'n*, No. SA12CA1002FBHJB, 2013 WL 12394349, at *2 (W.D. Tex. June 11, 2013), *report and recommendation adopted*, No. SA-12-CA-1002-FB, 2013 WL 12394008 (W.D. Tex. Aug. 5, 2013). "[I]t provides for judicial review only for specified persons and only for specified decisions[.]" *Eakin*, 2013 WL 12394349, at *3. Specifically, the pertinent portion of the MSPA says:

> (a) **Right of review.**--A person who is the primary next of kin (or the previously designated person) of a person who is the subject of a finding described in subsection (b) may obtain judicial review in a United States district court of that finding, but only on the basis of a claim that there is information that could affect the status of the missing person's case that was not adequately considered during the administrative review process under this chapter. Any such review shall be as provided in section 706 of title 5.
>
> (b) **Findings for which judicial review may be sought.**--Subsection (a) applies to the following findings:
>
> (1) A finding by a board appointed under section 1504 or 1505 of this title that a missing person is dead.
>
> (2) A finding by a board appointed under section 1509 of this title that confirms that a missing person formerly declared dead is in fact dead.
>
> (c) **Subsequent review.**--Appeals from a decision of the district court shall be taken to the appropriate United States court of appeals and to the Supreme Court as provided by law.

10 U.S.C.A. § 1508.

Because the MSPA only provides for judicial review under limited circumstances, *Eakin*, 2013 WL 12394349, at *2, the Court must first consider whether it has subject-matter jurisdiction to consider Wallace's claim under 10 U.S.C. § 1511(a) before addressing whether such a claim survives the Government's Rule 12(b)(6) Motion. "It is axiomatic that a court may not proceed at all in a case unless it has jurisdiction." *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 764

(8th Cir. 2001). Courts therefore have a *sua sponte* obligation to consider the issue of subject matter jurisdiction if they believe it may be lacking. *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011).[7] Having done so, the Court concludes that Wallace's claim for damages under 10 U.S.C. § 1511 is not subject to judicial review, thereby depriving the Court of subject matter jurisdiction. *See Eakin*, 2013 WL 12394008, at *3 (agreeing that the MSPA did "not provide the Court with jurisdiction to hear such claims" where the claims asserted were not subject to judicial review).

Although Wallace has alleged that the Army "declared" him killed in action on November 2, 1966, Filing 1 at 3, he never alleges by what means or under what authority the Army formerly "declared" him to be dead. Nor does Wallace identify "who" in the Army "declared" him dead. Wallace insists that his "attorney at the time" found his military records and "requisition[ed] [his] death certificate (DD 1300) and [his] true DD214 and other military records." Filing 17 at 1. However, Wallace does not assert that a DD 1300 or other documentation of death was subsequently discovered or obtained. Thus, Wallace has not actually claimed that there is a DD 1300 which exists and states that he was declared dead. He has only alleged that such documentation was requested. *See Requisition*, Black's Law Dictionary, 1561 (11th ed. 2019) ("An authoritative formal demand, usu. on the basis of some official right or authority"). Wallace has also not alleged that an administrative board made any finding of death in his case. The plain language of § 1508 makes clear that judicial review may only be sought to review findings by boards appointed under §§ 1504, 1505, or 1509. *See* 10 U.S.C. § 1508(b)(1)–(2); *see also* Stahl,

---

[7] The Court will consider all filings that have been submitted on this motion in ruling on the issue of subject-matter jurisdiction. Therefore, the Court's analysis is "factual" rather than "facial." *See Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990); *Croyle by & through Croyle v. United States*, 908 F.3d 377, 380–81 (8th Cir. 2018).

152 Mil. L. Rev. at 93–94. In the absence of any allegation that this matter was considered by such a board, there is nothing for this Court to judicially review. Therefore, the Court lacks subject matter jurisdiction over this claim.

> 3. *In the Alternative, Even if the Court Had Subject Matter Jurisdiction, it Would Hold that Wallace Failed to State a Claim Pursuant to Rule 12(b)(6)*

Although it is unnecessary to do so, the Court will now explain why it would alternatively hold that dismissal would also be appropriate pursuant to Rule 12(b)(6). Even if this Court believed there was subject-matter jurisdiction over his claim for damages, Wallace has still failed to assert a facially plausible entitlement to relief under 10 U.S.C. § 1511. *See* Fed. R. Civ. P. 12(b)(6).

> a. Rule 12(b)(6) Standards

Upon a defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6), "[c]onclusory allegations and 'threadbare recitals of the elements of a cause of action' cannot survive . . . ." *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[a] claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). "Mere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). Moreover, "[w]hile the Court accepts as true all

10

well-pleaded factual allegations and reasonable inferences drawn from those allegations, the Court need not stretch allegations beyond their sensible and reasonable implications." *Glick v. W. Power Sports Inc.*, 944 F.3d 714, 717 n.2 (8th Cir. 2019).

  b. Analysis

Wallace has not alleged that he was ever "missing" as that term is understood within the context of the MSPA. *See* 10 U.S.C. § 1513. The plain text of 10 U.S.C. § 1508(b) makes clear that judicial review may only be sought based on a finding by a board "that a missing person is dead" or a finding by a board "that confirms a missing person formerly declared dead is in fact dead." *See* 10 U.S.C. § 1508(b)(1)–(2). Although "unaccounted" for persons are considered missing persons for purposes of the MSPA, *see* 10 U.S.C. § 1509(c), Wallace has not alleged that he was "unaccounted" for. He repeatedly claims that the Army declared him killed in action. *See* Filing 1 at 3, 4; Filing 17 at 1; Filing 21 at 1. Nor has Wallace alleged that he was outside the control of the United States. The plain text of § 1511(a) refers to persons who are not just found alive, but who are "found alive *and* returned to the control of the United States . . . ." 10 U.S.C. § 1511(a) (emphasis added).[8] Wallace has also failed to plausibly plead an entitlement to lost wages. Wallace alleges in his Complaint that he was declared dead because he was "mistaken . . . for a different soldier." Filing 1 at 4. However, he simultaneously alleges, the "United States Army still had [him] still in the military." Filing 1 at 4. At no point does Wallace allege that the Army failed to pay him while he was "still in the military." *See* Filing 1 at 4. In other words, even when accepting Wallace's claim that someone in the Army mistakenly declared him dead, he has not

---

[8] Wallace claims that he "return[ed] from Japan military hospital [sic] February 1967 with no orders to report back to any military base." Filing 21 at 1. The Court does not understand Wallace to be alleging that he was under the control of the Japanese; it understands him to mean that he was in a United States military hospital located in Japan. *See e.g., Bell v. United States*, 31 F.R.D. 32, 34 (D. Kan. 1962) (taking "judicial notice of the fact that the Johnson Air Force Hospital located at Tokyo, Japan, is within a foreign country"). Thus, Wallace has not alleged that he was ever outside the control of the United States.

pleaded that this erroneous declaration had any effect on his pay, allowances, or other benefits while he was "still in the military." *See* Filing 1 at 4. For these reasons, the Court would dismiss his Complaint pursuant to Rule 12(b)(6) even if it believed there was subject-matter jurisdiction.

   4. *The Court also Lacks Subject Matter Jurisdiction over Wallace's Claim for Injunctive Relief*

Wallace also seeks injunctive relief in the form of this Court ordering that his "[r]ecords be change[d] [a]nd correct[ed]." Filing 1 at 4. To the extent that Wallace seeks correction of his military records, he is required "to exhaust his administrative remedies by appealing to the Army Board for the Correction of Military Records (ABCMR)." *Watson v. Arkansas Nat. Guard*, 886 F.2d 1004, 1008 (8th Cir. 1989). The failure to exhaust administrative remedies before the ABCMR deprives this Court of subject-matter jurisdiction. *Bryant v. Dep't of Army*, 553 F. Supp. 2d 1098, 1103 (D. Minn. 2008). In one of his filings, Wallace states that he "tried to get [his] records corrected with [the ABCMR] and in July, 1969 (ABCMR) responded and stated that all I [sic] military records were ordered." Filing 19 at 1. He goes on to say in this filing that he "could not get [his] military records corrected and could not go back into the military." Filing 19 at 1. Still, it is entirely unclear what records Wallace is referring to. Therefore, because the failure to exhaust administrative remedies before the ABCMR renders a claim "premature," *Watson*, 886 F.2d at 1008, and "[t]he plaintiff bears the burden to establish subject-matter jurisdiction[,]" *Two Eagle v. United States*, 57 F.4th 616, 620 (8th Cir. 2023), Wallace was required to show that this jurisdictional prerequisite is satisfied. He has not done so. In the absence of any allegation that the same claim he presents to this Court was previously presented to the ABCMR, this Court lacks jurisdiction to consider such a claim seeking the correction of military records.[9]

---

[9] The Court takes judicial notice of a prior Order it issued in a different case brought by Wallace. *See* Memorandum and Order of the Court, dated July 18, 2022, Case No. 21–CV–456 at 1. As the Court explained in that

Alternatively, even if the Court had subject-matter jurisdiction over this claim it would still rule in the United States' favor on Rule 12(b)(6) grounds because Wallace has failed to state a cognizable claim. It is entirely unclear "what" records he wants changed and "how" he wants them corrected. His complete lack of detail provides the United States with no notice as to the claim it is defending against. Even under the more lenient standards that apply to *pro se* litigants, Wallace's statement that certain unspecified military records are in need of correction fails to give the United States fair notice of what his claim is and the grounds upon which it rests. *Erickson*, 551 U.S. at 93 (citing Federal Rule of Civil Procedure 8(a)(2)).

> 5. *Wallace's Requests to Hold a Hearing and to Subpoena a Witness are Also Denied*

As noted previously, Wallace has also requested that this Court hold a hearing, Filing 19 at 1, and that this Court subpoena a retired Marine Judge Advocate, Filing 21 at 2. The Court's resolution of this matter moots the need to hold a hearing or hear from any witness. *See Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008) (noting that district courts are entitled to discretion in determining whether to hold an evidentiary hearing). Moreover, Wallace did not offer any specific reason as to why a hearing might have been helpful or necessary in assessing whether this case could go forward. Instead, his purported reason for requesting a hearing is that "this case covers so much complexity and sensitive matters" and "that if both party's [sic] could have the opportunity to have a hearing both party's [sic] [might] come to a[n] agreement." Filing 19 at 1. The Court will not hold a hearing to purportedly facilitate a potential settlement—especially given the Court's determination that it lacks subject-matter jurisdiction. For the reasons explained above, the record (which includes the materials Wallace submitted along with Filing 21), is sufficient to

---

Order, Wallace had not administratively exhausted the claims he was attempting to assert before the Court and, therefore, the Court lacked subject-matter jurisdiction. *Id.* at 3.

decide this matter without the need to hold a hearing or hear from any witness. The Court therefore denies Wallace's request for a hearing and request to subpoena a retired Marine Judge Advocate.

6. *Dismissal without Prejudice is Appropriate*

The only question left is the nature of the dismissal. The Eighth Circuit has repeatedly said "[a] district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent." *Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 696 (8th Cir. 2019) (quoting *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004)); *see also* Hart, 630 F.3d at 1091 (modifying jurisdictional dismissal to be without prejudice). Other circuit courts have concluded likewise. *See e.g.*, *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022) ("A dismissal for lack of subject matter jurisdiction must be without prejudice, because 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case'"); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice"). Because the Court concludes that it lacks subject matter jurisdiction over Wallace's claims, the Court will dismiss his Complaint without prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court dismisses Wallace's Complaint, Filing 1, without prejudice because the Court lacks subject-matter jurisdiction over his claims. As explained in the body of this Order, the Court would alternatively rule in the United States' favor pursuant to Rule 12(b)(6) even if this Court had subject-matter jurisdiction. However, because the Court has resolved this matter on jurisdictional grounds, it necessarily moots the United States' Rule 12(b)(6) arguments. Accordingly,

IT IS ORDERED:

1. The United States' Motion to Dismiss, Filing 15, is denied as moot to the extent it is premised upon Rule 12(b)(6) of the Federal Rules for Civil Procedure;

2. Wallace's claim for damages against the United States is dismissed without prejudice pursuant to Rule 12(b)(1) of the Federal Rules for Civil Procedure for lack of subject matter jurisdiction;

3. Wallace's claim for injunctive relief is dismissed without prejudice pursuant to Rule 12(b)(1) of the Federal Rules for Civil Procedure for lack of subject matter jurisdiction; and

4. Wallace's request for a hearing, Filing 19, is denied.

5. Wallace's request for this Court to subpoena a witness, Filing 21, is denied; and

6. This case is terminated.

Dated this 30th day of June, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge